UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED LEVAO,<br><br>　　　　　　Petitioner,<br>v.<br><br>D.T. LEWIS, Warden,<br><br>　　　　　　Respondent. | Civil No. 10cv1040 W (NLS)<br><br>**REPORT AND RECOMMENDATION DENYING IN PART AND GRANTING IN PART PETITIONER'S MOTION FOR LEAVE TO FILE SECOND AMENDED PETITION**<br><br>[Doc. No. 33.] |

## INTRODUCTION

Petitioner has filed a motion to amend his First Amended Petition for Writ of Habeas Corpus. [Doc. No. 33.] He has newly exhausted claims that he seeks to consolidate with his pending claims. [*Id*.] Respondent has filed an Opposition. [Doc. No. 34.] For the reasons stated below, the Court **RECOMMENDS** that Petitioner's motion be denied in part and granted in part.

## PROCEDURAL BACKGROUND

On May 13, 2010, United Levao ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Pet."). The Petition contained four exhausted claims and five unexhausted claims. (*Id.*) Petitioner filed a motion to hold the Petition in abeyance and stay the proceedings to accommodate his return to state court to exhaust the five claims. [Doc. Nos. 1 & 3.] The Court found the delay in exhausting the claims in issue was not excusable on good cause grounds and denied the motion. [Doc. No. 12.] However, the Court outlined the

1 correct procedures available to Petitioner to avoid dismissal of his mixed Petition. [*Id*. at 7-11.]

2 On December 10, 2010, Petitioner filed a motion to withdraw his unexhausted claims and hold the First Amended Complaint ("FAP") in abeyance until his other claims were exhausted. [Doc. No. 13.] The Court granted Petitioner's motion and stayed the case. [Doc. No. 26.] The Court further advised Petitioner that because his unexhausted claims were not independently timely, he would only be granted leave to amend the FAP if the unexhausted claims related back to the exhausted ones currently pending in the FAP. [*Id.* at 6.]

On July 11, 2011, Petitioner filed a request for leave to amend his FAP to included newly exhausted claims. [Doc. No. 28.] On July 15, 2011, Judge Whelan vacated the stay in this case and denied Petitioner's request to amend the FAP because Petitioner had not addressed whether the newly exhausted claims related back to the claims currently pending. [Doc. No. 29.] Petitioner was given an opportunity to resubmit his request for leave to file an amended petition to address whether his newly exhausted claims relate back to the claims in the FAP. [Doc. No. 32.]

Petitioner has now filed another motion to amend his FAP. [Doc. No. 33.] Respondent has filed an Opposition ("Opp."). [Doc. No. 34.]

**FACTUAL BACKGROUND**

According to the state appellate court's opinion, Petitioner and his co-defendant Jordan Potts were members of the Bloods street gang. [Doc. No. 9 (R&R) at 2-3 ] The Crips are a rival gang of the Bloods. Bloods members wear red to show gang affiliation and Crips wear blue. (*Id.*) On the evening of April 31, 2004, victim Jesse Watson, his foster mother and two siblings, were moving out of a condo within an area claimed by the Crips. [*Id*.] Watson was hauling furniture into a truck and was wearing blue, although he was not alleged to have been a gang member. (*Id.*) Petitioner approached Watson and fired a shotgun at him. Potts also fired multiple shots at Watson. One of the shots fired by Potts hit Petitioner. Watson died at the scene. (*Id.*)

Witnesses to the shooting saw the shooters flee in a red Nissan Sentra; the witnesses recorded the license plate number. [Doc. No. 9at 2-3 ] The Sentra was later found, abandoned. (*Id.*) A jacket worn by Petitioner, which had been discarded in some bushes by an elementary school, was later recovered, along with the shotgun used in the murder. (*Id.*) The jacket and the Sentra contained blood matching Petitioner's

DNA profile. (*Id.*)

After the shooting, Potts shot himself in the leg. [Doc. No. 9 at 2-3 ] He and Petitioner then told police they had been in a drive-by shooting. (*Id.*) The next day, Petitioner, who was 15 years old at the time, confessed to being involved in the murder to the police and his mother. (Opp. at 3; [doc. no. 8-1].) Petitioner subsequently recanted. (Pet., Attach. 1 at 8.) Police connected Potts and Petitioner to Watson's murder based on witness descriptions of the shooters. (*Id.*)

Maurice Christiansen, the driver of the Sentra, pleaded guilty to voluntary manslaughter in exchange for a maximum sentence of four years in prison and truthful testimony at trial. (*Id.*) Potts and Petitioner were tried as co-defendants. Petitioner was found guilty of first degree murder and sentenced to an indeterminate term of 50 years to life. (Pet.)

## DISCUSSION

*(1) Applicable law*

AEDPA applies a one-year statute of limitations to federal habeas corpus petitions. 28 U.S.C.A. § 2244(d)(1)(A)-(D) (West Supp. 2002). A petitioner who wishes to challenge his state court conviction in federal court via a habeas corpus petition must file within one year of his conviction becoming final. A petitioner's filing of a federal habeas petition does not toll the limitations period. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

Section 2242 of 28 U.S.C.A. states habeas petitions "may be amended...as provided in the rules of procedure applicable to civil actions." Federal Rule of Civil Procedure 15 addresses amendments to pleadings. Amendments made after the statute of limitations has run must relate back to the original pleading by arising "out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Rule 15(c)(1)(B).

In this case, it is undisputed that the limitations period expired on May 12, 2010. Petitioner's federal habeas petition was constructively filed on May 11, 2010. (Doc. No. 9 (R&R) at 6, n.3.) A federal habeas petition does not toll the statute of limitations contained in AEDPA. Thus, for Petitioner's newly exhausted claims to be timely, they must relate back to the exhausted claims in his original Petition pursuant to Rule 15(c)(1)(B).

The United States Supreme Court addressed the interaction of Rule 15(c)(1)'s relation back

provision and AEDPA's one-year statue of limitations in *Mayle v. Felix,* 545 U.S. 644 (2005), and held that "[a]n amended habeas petition does not relate back (and thereby avoid AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both *time* and *type* from those set forth in the original pleading." *Mayle*, 545 U.S. at 645 (emphasis added).

The original petition in *Mayle* contained a Confrontation Clause claim based on the admission of a witness's videotaped out-of-court statement. *Id.* at 645. Petitioner Felix filed an amended petition after the statute of limitations had run which added a Fifth Amendment claim arising from the admission of his pre-trial statements to the police and a Sixth Amendment claim for ineffective assistance of appellate counsel for his failure to challenge the use of Felix's statements on appeal. *Id.* at 651-652. Felix argued that the amended claims challenged the constitutionality of the same criminal conviction, and therefore they arose out of the same "conduct, transaction, or occurrence." *Id.* at 644. The district court denied the Fifth Amendment claim as time-barred and denied the Confrontation Clause claim on its merits. *Id.* at 644. On review, the Ninth Circuit agreed with Felix, and reversed the district court's dismissal of the Fifth Amendment claim, finding that the "relevant 'transaction' for Rule 15(c)(2) purposes was Felix's state-court trial and conviction." *Id.* at 645.

The United States Supreme Court disagreed with the Ninth Circuit's definition of "conduct, transaction, or occurrence," holding it was too broad because habeas claims necessarily challenge the constitutionality of a conviction or sentence and such an expansive definition would circumvent the purposes of AEDPA by allowing "virtually any new claim introduced in an amended habeas petition [to] relate back." *Mayle*, 545 U.S. at 645. Instead, the Court held that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims," and that Felix's amended petition did not relate back to the originally filed petition because it "targeted separate episodes, the pretrial police interrogation of witness Williams in his original petition, [and] his own interrogation at a different time and place in his amended petition." *Id.* at 659-60 (internal citations omitted). The Court also held that Felix's Confrontation Clause and self-incriminatory claims "would be pleaded discretely" under the requirements of Habeas Corpus Rule 2 (c) because "[e]ach separate congeries of facts supporting the grounds for relief . . . would delineate an 'occurrence'." *Id.*(internal citations omitted).

As an example of permissible relation-back, the *Mayle* Court cited *Mandacina v. United States*, 328

1  F.3d 995, 1000-01 (8th Cir. 2003), where an original petition contained a *Brady* claim asserting the
2  government failed to disclose exculpatory evidence, and subsequent attempts to amend the petition involved
3  allegations that the government failed to provide a specific report.  The court noted that the new claims
4  related-back to the original claims, reasoning that "both pleadings related to evidence obtained at the same
5  time by the same police department." *Mayle*. 545 U.S. at 575, n. 7 (quoting *Mandacina*, 328 F.3d at 1000-
6  01.)

7  The Ninth Circuit similarly held that a petitioner could amend a *Brady* claim which alleged that the
8  prosecutor withheld exculpatory evidence acquired from a police investigation with an allegation that
9  asserted the prosecutor failed to disclose additional pieces of evidence which originated from the same
10 police investigation. *Valdovinos v. McGrath*, 598 F.3d 568, 575 (9th Cir. 2010), *judgment vacated on other*
11 *grounds by Horel v. Valdovinos*, ____ U.S.____(2011).  In the original petition, Valdovinos argued he was
12 denied due process and a fair trial because the prosecutor withheld prior photo lineups, evidence of drugs
13 and a gun found in the room of Lopez,  with whom Valdovinos shared an apartment, and "favorable
14 treatment" given to Lopez for his testimony. *Id.* at 575.  The amendments attempted to add a *Brady* claim
15 arising from the prosecutor's failure to disclose an anonymous letter describing a motive for the killing and
16 a photograph of someone of similar stature and dressed like petitioner the night of the murder. *Id.*  The
17 district court held that the new claim related back to the original claim, and granted petitioner a stay to
18 return to state court and exhaust the *Brady* claim based on the new evidence. *Id.* at 573.  The Ninth Circuit
19 affirmed the district court's decision, stating that "each claim . . . is of the same type -exculpatory
20 information the government had in its file- that the government failed to disclose at the required time...[and]
21 [a]s in *Mandacina* '[t]he Brady claims in the original [petition] . . . satisfy Rule 15 (c) by providing the
22 government with the notice that the statutes of limitation were intended to provide'." *Id.* (citing *Mandacina*,
23 328 F.3d at 1001.)

24 In contrast, the Ninth Circuit in *Hebner v. McGrath*, 543 F.3d 1133(9th Cir. 2008), found that
25 petitioner's amended claim did not relate back to a claim in his originally filed petition because the two
26 claims depended upon separate transactions and did not share a common core of operative facts.  In that
27 case, a petitioner sought to amend his petition to add a due process claim challenging a jury instruction
28 because the instruction allowed the panel to find him guilty of rape "merely because of a preponderance of

evidence that [he had] committed a similar offense," while the original claim challenged the admission of the prior rape victim's testimony on due process grounds. *Id.* at 1136-38. The appellate court found that "the original claim related to the evidence admitted at trial, while his later claim was directed at the jury instructions given by the trial court." *Id.* The appellate court reasoned that petitioner, like the petitioner in *Mayle*, was required to plead his claims separately because each "would have been supported by 'separate congeries of facts,' the first claim focusing on the admission of evidence and the later claim on the instructions given to the jury, suggesting they were separate occurrences." *Id.* at 1139, (quoting *Mayle*, 545 U.S. at 646).

*(2) Application of the law to Petitioner's claims*

Respondent states "none of [Petitioner's] new claims relate back to the claims raised in the FAP." (Opp. at 6.) "The 'original pleading' in a habeas proceeding is the petition as initially filed." *Mayle.* Although the FAP in this case contains only the exhausted claims as originally filed, the Court will look to the original Petition for its analysis. [Doc. No. 1.]

The original Petition contained four exhausted claims. First, Petitioner claimed ineffective assistance of trial counsel for failing to move to sever Petitioner's trial from that of his co-defendant, Potts, and for failing to secure an eyewitness identification expert. The facts Petitioner presented for this claim were twofold. First, Petitioner argued that the evidence presented about his co-defendant, Potts, worked to prejudice the jury against him. For example, Potts had attempted to escape from jail which was entered to show a guilty conscience and Potts' phone conversations from jail were played to the jury to show use of gang terminology and admissions to gang affiliation. (Pet., Attach. 1 at 2.) Second, Petitioner claimed that his counsel was deficient in failing to secure an identification expert to rebut the flawed testimony of the three individuals who identified him as the shooter. (*Id.* at 2-3.)

Additionally, Petitioner claimed the trial court erred in admitting highly prejudicial gang evidence and extensive testimony from two different gang experts which led to the jury finding the gang enhancement to be true despite its inapplicability to Petitioner for sentencing purposes. (*Id.* at 1.) Petitioner also claimed the court erred in denying his motion to suppress incriminating statements he made to his mother which were recorded and taken in violation of the Fourth Amendment. (*Id.* at 3.) Finally, Petitioner claimed his Fifth and Fourteenth Amendment rights were violated when the trial court denied his motion to suppress

his involuntary confession and other coerced statements to the police. (*Id*. at 3-4.)

The Court 's inquiry is to evaluate whether the newly exhausted claims share a common core of operative facts with the original, exhausted claims pending in the FAP.

    (a)    Ineffective assistance of trial counsel.

"A petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney malfeasance." *Haithcock v. Veal*, 2009 WL 3157480 (S.D.Cal., 2009), Slip Copy at *3, *citing United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005). Thus, each of Petitioner's new ineffectiveness claims must be analyzed based upon their underlying facts. *See Mayle* 545 U.S. at 664 n. 7 (new claim relates back when underlying facts are the same as those in original petition and only legal theory changes).

In his newly exhausted ineffectiveness claim, Petitioner alleges trial counsel was ineffective in failing to: (1) conduct a reasonable investigation which would have resulted in evidence that Petitioner was threatened by Potts into confessing to the crime; (2) prepare for his self-defense and misidentification defense at trial and at a hearing on the admissibility of evidence showing the victim, Watson, was known to have possessed a gun and that bullets were found in Watson's car on the day of the shooting; (3) allow Petitioner to testify at trial; (4) properly prepare for a hearing on the motion to suppress evidence of statements he made to his mother in violation of the Fourth and Fifth Amendments; (5) seek sanctions against the prosecutor for failing to preserve crime scene evidence; (6) sufficiently prepare to ensure the admissibility of Watson's drug activity and gun possession; and (7) effectively object to the admission of photo identification evidence. He also alleges the cumulative effect of counsel's errors denied him the effective assistance of counsel.

Only claims (4) and (7) above relate back to the original Petition. Claim (4) is based on the same occurrence and facts as that described in Petitioner's exhausted claim that his Fourth Amendment rights were violated when police recorded his conversation with his mother. Claim (7) relates back to Petitioner's exhausted ineffectiveness claim that trial counsel failed to present the testimony of an identification expert to rebut the identification evidence against him. These claims are of the same type and time as alleged in the FAP.

The other claims, however, are based on a set of new and different facts than those used to support the exhausted claims. The new facts outlined by Petitioner center around his allegation that he was intimidated and forced into confessing to the shooting of Watson and that Watson was a drug dealer who possessed a gun. He claims he and Potts gave an older man called "Tank" a ride to find Watson who owed Tank money. (Pet., Attach. at 6.) Watson told Tank he needed half an hour to get the money. (*Id.*) Tank said he would wait but Petitioner and Potts left to find cars to break into. (*Id.* at 6-7.) When Petitioner and Potts returned a confrontation broke out between Tank and Watson and Watson's friend Kenneth Brown. (*Id.* at 7.) Watson and Brown began shooting and Tank and Potts returned fire. (*Id.*) Petitioner was shot in the crossfire. (*Id.*) Petitioner claims he was told to "take the wrap" for the incident because he was a minor and would not get convicted for life. (*Id.*) Additionally, Petitioner claims Potts stated it was Petitioner's fault that he got shot and that if Tank was mentioned Petitioner would regret it and that "they all knew where my family lived." (*Id.*)

Like the new claims in *Mayle*, Petitioner's claims (apart from the two exceptions noted) "would be pleaded discretely" under the requirements of Habeas Corpus Rule 2 (c) because there were "separate congeries of facts supporting the grounds for relief ." *Mayle.* 545 U.S. at 661 (internal citations omitted). Further, because they are a different type of claim they would not "satisfy Rule 15 (c) by providing the government with the notice that the statutes of limitation were intended to provide'." *See Valdovinos*, 598 F.3d at 575 (citing *Mandacina*, 328 F.3d at 1001).

      (b)      Prosecutorial misconduct, Watson's prior bad acts, Treaty Rights of the Child, and ineffectiveness of appellate counsel

All of these claims are based on separate and distinct facts than those upon which Petitioner's exhausted claims rest. As such they do not meet *Mayle*'s test requiring "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle*, 545 U.S. at 659-60.

Petitioner claims the prosecutor failed to preserve the crime scene by allowing Kenneth Brown, a witness at the scene, to leave without being searched for a weapon or tested for gun shot residue. There is no mention of prosecutorial misconduct in Petitioner's exhausted claims or any facts that would support the claim.

Similarly, Petitioner newly argues that he was improperly prevented from cross-examining or

entering any character evidence about Watson, the victim. When Petitioner raised evidentiary issues in his exhausted claims there was no mention of this particular argument or facts about Watson's gun possession and drug sales.

In his original claims, Petitioner states "his Fifth and Fourteenth Amendment rights were violated by the denial of the 15-year-old petitioner's motion to suppress the involuntary statements he made to police." (Pet., Attach. 1 at 3.) Petitioner's purpose was to argue that he was coerced by the police into making incriminating statements in violation of his constitutional rights. Petitioner now raises the issue of his age by arguing that his prosecution as an adult should not have taken place at all because it violated the United Nations Convention on the Rights of the Child[1] to which the United States is a signatory. Nowhere in the original claims does Petitioner question standing trial as an adult. This is not the same type of claim as presented before and would not provide "the government with the notice that the statutes of limitation were intended to provide'." *See Valdovinos*, 598 F.3d at 573.

Finally, Petitioner claims appellate counsel was ineffective in failing to raise the trial court's error in disallowing evidence of Watson's bad acts and failing to raise the U.S. Treaty violation. The Court has already determined that the facts supporting these new claims are separate than those raised in Petitioner's original claims. Thus, they do not relate back to the exhausted original claims.

## CONCLUSION

The Court finds only two of Petitioner's newly exhausted claims relate back to the original Petition. The Court **RECOMMENDS** Petitioner be given leave to amend his Petition to add the following claims: (1) ineffective assistance of trial counsel in failing to object to the identification evidence; and (2) ineffective assistance of trial counsel in failing to properly prepare for a hearing on the motion to suppress evidence of statements he made to his mother in violation of the Fourth and Fifth Amendments. The Court **FURTHER RECOMMENDS** denying Petitioner's request to amend the Petition with all the other remaining newly exhausted claims.

**IT IS ORDERED** that no later than **November 28, 2011,** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections

---

1. This is a human rights treaty setting out the civil, political, economic, social, health and cultural rights of children. www.unicef.org

to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 12, 2011.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: October 25, 2011

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court