**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED LEVAO, | ) | Civil No. 10cv1040 W (NLS) |
| Petitioner, | ) ) | **REPORT AND RECOMMENDATION** |
| v. | ) ) | **FOR ORDER DENYING FIRST AMENDED PETITION FOR WRIT OF** |
| D.T. LEWIS, Warden, | ) ) | **HABEAS CORPUS** |
| Respondent. | ) ) ) | [Doc. No. 16] |

United Levao (Levao or Petitioner), a California prisoner proceeding pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Petition). Levao is serving an indeterminate sentence of 15 years to life for first-degree murder. He contests his confinement, alleging that his due process rights and other constitutional rights under the fourth, fifth, sixth and fourteenth amendments were violated from the time he was first detained up through his trial and conviction. Respondent filed an answer, and then as directed by the court, an amended answer, arguing that the court should deny the Petition on all grounds. The court granted Levao's 60-day extension request for him to file his traverse. The traverse was due December 14, 2012. As of the date of this order, no traverse has been filed.

This court has reviewed the Petition, amended answer, and the complete record in this case. After a thorough review, the court **RECOMMENDS** that the Petition be **DENIED**.

///

///

# I. PROCEDURAL HISTORY

## A. The Trial.

On March 10, 2005, Levao and his co-defendant Jordan Andrew Potts[1] were charged with first degree murder in an amended information. Lodgment 7 at 6. They were both alleged to have personally used, on September 1, 2004,[2] a firearm that resulted in death to another person and to have committed the crime to benefit a street gang. *Id.* at 6-8. Trial started on November 30, 2006. Lodgement 8 at 335. On December 15, 2006, a jury found both Levao and Potts guilty of murder and found the allegations to be true. Lodgment 8 at 363-363.

On July 10, 2007, Levao was sentenced to life with the possibility of parole for the murder conviction. Lodgment 8 at 298. He received a consecutive sentence of 25 years to life for the personal use of a firearm enhancement. *Id.* A ten year sentence for the gang enhancement was stayed. *Id.* at 299. Potts received a similar sentence on June 12, 2007. Lodgment 7 at 419-420.

## B. Direct Appeal.

On the direct appeal, Levao raised four claims: (1) his due process rights were violated when inflammatory gang evidence was admitted even though no enhanced term could be imposed due to other charges; (2) his trial counsel was ineffective for failing to (a) move to sever Petitioner's trial from the co-defendant and (b) secure an eyewitness identification expert; (3) his fourth amendment rights were violated when the trial court denied his motion to suppress statements he made to his mother; and (4) his fifth and fourteenth amendment rights were violated when the trial court refused to suppress involuntary statements he made to police. Lodgment 6.

On November 12, 2008 the court of appeal denied all claims in the appeal. Lodgment 3. But it struck the ten-year gang enhancement and imposed a 15-year minimum parole eligibility date. *Id.* at 8-9.

## C. Petition for Review.

In the petition for review Levao raised the same grounds as he raised on direct appeal. Lodgment 2. The California Supreme Court denied the petition without comment on February 17, 2009.

---

[1] Levao and Potts were tried together and were co-defendants on appeal.

[2] Levao was 15 years old at the time of the crime but was tried as an adult.

**D.     The Federal Petition.**

Levao signed his initial Petition on May 6, 2010, and this court docketed it on May 13, 2010.[3] Dkt. No. 1. It contained four exhausted claims and five unexhausted claims. Dkt. No. 9, pp.1-2. Levao filed a motion to stay and abey the Petition while he returned to state court to exhaust the five claims. Dkt. Nos. 1, 3. The court found there was no good cause to justify the delay in exhausting the claims and denied the motion. Dkt. No. 12. The court then outlined the options available to Levao to avoid dismissal of his mixed Petition. *Id.* at 7-11.

On December 10, 2010, Petitioner filed a motion to withdraw his unexhausted claims and hold the Petition in abeyance while he exhausted the five claims. Dkt. No. 13. He also filed a motion to file a First Amended Petition (FAP). Dkt. No. 14. Before the court could resolve the motion to withdraw, Levao filed a FAP on January 7, 2012. Dkt. No. 16. Shorly after, this court drafted a Report and Recommendation (R&R) for an order granting the motion to withdraw and abey. Dkt. No. 20. The district judge adopted the R&R and stayed the case. Dkt. No. 26. The court advised Levao that because his unexhausted claims were not independently timely, he would only be granted leave to amend the FAP if the unexhausted claims related back to the exhausted ones currently pending in the FAP. *Id.* at 6.

On July 11, 2011, Levao filed a motion for leave to amend his FAP to include newly exhausted claims. Dkt. No. 28. On July 15, 2011, the district judge vacated the stay in this case and denied Levao's request to amend the FAP because he had not addressed whether the newly exhausted claims related back to the claims currently pending. Dkt. No. 29. The court then gave Levao an opportunity to resubmit his request for leave to file an amended petition to address whether his newly exhausted claims relate back to the claims in the FAP. Dkt. No. 32.

Levao filed another motion to amend his FAP to add five new claims. Dkt. No. 33. The court granted in part and denied in part the motion, and gave Levao until February 17, 2012 to file a Second Amended Petition to include only two of the newly-exhausted claims that related back to the original four claims in the Petition. Dkt. No. 36, p.1. Levao never filed a Second Amended Petition. *Id.* The court then ordered this case to proceed on the four claims in the FAP that the state court had determined

---

[3]The statute of limitations under AEDPA expired on May 12, 2010. Dkt. No. 12, p.9.

on appeal. *Id.*

### E. Factual Background[4]

The Deep Valley Bloods (Bloods) and Deep Valley Crips (Crips) are rival criminal street gangs in Oceanside, California. Bloods members wear red to show gang affiliation and Crips members wear blue. Defendants are members of the Bloods.

On the evening of August 31, 2004, Watson, his foster mother, Anita Garcia, and his two siblings, Lisa and David, were moving out of a condominium located in an area of Oceanside, California claimed by the Crips. Lisa and Anita were cleaning the condominium while Watson and his friend, Kenny Brown, were loading belongings into a truck. Although Watson was not a Crips gang member, he was wearing blue at the time and had friends affiliated with the Crips.

As Watson placed an item into the truck, Levao approached from the front of the truck and fired a shotgun at him. Potts also approached and fired multiple shots from a handgun at Watson, with one shot hitting Levao in the left arm. Watson died at the scene, having suffered two shotgun wounds to his back that collapsed his lungs and a gunshot wound to his arm that severed both arteries.

Defendants fled to a waiting red Nissan Sentra driven by Maurice Christiansen. Neighbors observed the car leaving, with one person recording the license plate number. After driving away, Potts and Christiansen dropped Levao off and then abandoned the Sentra, which had been stolen, near an elementary school. While still at the school, Potts fired a round from the shotgun and then dumped it along with the jacket previously worn by Levao into some bushes behind the school grounds. Police later recovered blood matching Levao's DNA profile from the Sentra and the jacket.

Potts shot himself in the leg with the handgun, but told police that he had been shot during a drive-by shooting. Levao also called the police and reported that he had been shot in a drive-by shooting. Police quickly connected Defendants to Watson's murder based on witness descriptions. Lodgment 3 at 2-4.

---

[4]This court quotes verbatim the factual background from the California Court of Appeal's opinion. Lodgment 3. *See* 28 U.S.C.§ 2254(e)(1) ("a determination of a factual issue made by a state court shall be presumed to be correct"); *Sumner v. Mata*, 449 U.S. 539, 545-547 (1981) (deference is owed to factual findings of state trial and appellate courts); *Garvin v. Farmon*, 258 F.3d 951, 952 (9th Cir. 2001) (paraphrasing facts from the state court opinion). Petitioner may rebut the presumption only by clear and convincing evidence. 28 U.S.C.§ 2254(e)(1); *Slovik v. Yates*, 545 F.3d 1181, 1183 n.1 (9th Cir. 2008).

## II. LEGAL STANDARD

### A.     AEDPA Governs this Petition.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Petition. *See Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997).  Under AEDPA, a federal court will not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the decision was (1) contrary to or involved an unreasonable application of clearly established federal law; or (2) based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002).  "Clearly established federal law," for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A federal habeas petition must allege a deprivation of one or more federal rights; the federal court will not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

### B.     Decisions that Contradict or Unreasonably Apply Federal Law.

A federal habeas court may grant relief where the state court (1) decides a case "contrary to" federal law by applying a rule different from the governing law set forth in Supreme Court cases; or (2) decides a case differently than the Supreme Court on a set of indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A federal court may also grant habeas relief where a state court decision is an "unreasonable application" of federal law, such as where the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies those decisions to the facts at issue. *Id.*

The state court decision must be more than incorrect or erroneous; to warrant habeas relief the state court's application of "clearly established federal law" must be "objectively unreasonable." *Lockyer*, 538 U.S. at 75.  "Objectively unreasonable" differs from "clear error" in that a federal court cannot grant habeas relief only because it believes the state court erroneously or incorrectly applied "clearly established federal law;" the application must be objectively unreasonable. *Id.* at 75-76 (internal citation omitted).  That standard under AEDPA is difficult to meet and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388,

1398 (2011) (internal quotations omitted). A state court's determination that lacks merit still "precludes habeas relief so long as fairminded jurists could disagree" on the correctness of the ruling. *Harrington v. Richter*, 562 U.S. __, __, 131 S. Ct. 770, 786 (2011).

### C. Decisions Based on an Unreasonable Determination of Facts.

Section 2254(e)(1) provides: "[a] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

### D. Review of State Court Decision.

If the State Supreme Court silently denies a Petitioner's appeal with a summary dismissal, the reviewing federal habeas court must look through to the last reasoned state court opinion in making a decision. *See Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). Here, the decision from the California Court of Appeal is the last reasoned state court decision addressing claims one through four. Lodgment 3.

Where no reasoned state court decision addresses a petitioner's claim, the reviewing federal court must conduct "an independent review of the record" to determine whether the state court's decision is objectively unreasonable. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). There is no reasoned state court decision addressing claims five and six, as those were presented only to the California Supreme Court and were allowed in this petition because they related back to the claims in the original petition. This court will conduct an independent review of claims five and six.

### III. DISCUSSION

### A. Ground One: Due Process Violation for Gang Evidence.

Levao contends the trial court violated his due process rights when it admitted highly inflammatory gang evidence in a case where the enhanced term could not be imposed, due to other charges. FAP, att.1, p.1. He argues this erroneous admission of evidence was so egregious it rendered his trial fundamentally unfair. *Id.* The evidence included testimony from two gang experts who explained gang culture in general and specific information about the Deep Valley Bloods. *Id.* They also opined that Levao and his co-defendant were members of the Deep Valley Bloods and committed the crime to benefit their gang. *Id.* Levao argues that "evidence of gangs, gang association and gang

activities permeated the trial" and that the "jury could not help but develop a bias against petitioner when assessing his guilt or innocence on the murder charge." *Id.*

Respondent set forth the evidence regarding Levao's gang affiliation and summarized the gang expert's opinion regarding how committing a murder can increase the status of an individual within a gang and how such a crime enhances the gang's reputation for violence. Respondent then argues that the state court's denial of this claim was consistent with state law and was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

The California Court of Appeal rejected the claim that the evidence was erroneously admitted because separate from proving the gang enhancement, it was highly probative of motive and intent:

> Finally, even if Defendants had admitted the gang enhancement allegation, at least some of the gang-related evidence would have been admissible on the issues of motive and intent. [Citation omitted.] While motive was not an element of the crimes, its presence tends to establish guilt (CALCRIM No. 370) and describes the reason a person chooses to commit a crime. [Citation omitted.] Here, the gang evidence provided some context to what would otherwise appear to a lay jury to have been a random and senseless murder. [Citation omitted.]
> ***
> Evidence of Defendants' gang membership, the manner in which gangs operate and the rivalry between the Bloods and the Crips was relevant to show a motive to kill Watson, a person in rival gang territory, wearing a rival gang's color, and who associated with rival gang members, in order to compel respect for the gang and to enhance their standing within the gang. (*People v. Martin* (1994) 23 Cal.App.4th 76, 81 [where evidence of gang activity or membership is important to the motive, it can be introduced even if prejudicial].) The evidence was not particularly inflammatory as it did not suggest that Defendants had previously been involved in any gang-related crimes.
> ***
> We reject Defendants' assertion that admission of the gang evidence was merely a tactical ploy to prejudice them because the enhanced term could not have been imposed due to the sentence for the other charges against them. This argument presupposes that the gang evidence was only admissible as to the gang enhancement allegation, an argument we have rejected.[5]

Lodgment 3 at 4-7.

To allege a due process claim due to a "failure to observe that fundamental fairness essential to

---

[5]In response to Respondent's statement that this court disfavors copying and pasting portions of the court of appeal's opinion (Mem. Ps&As, p.13 n.3), the court does not disfavor it completely but disfavors when a legal argument substantively contains only large excerpts of an opinion with superfluous information, Respondent tries to substitute "block quote" for its own analysis, and no citation to legal authority or analysis of the federal claim is included (*See* Oct. 31, 2012 Order, p.3).

the very concept of justice" the petitioner must show that "the absence of that fairness fatally infected the trial." *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986), cert. denied, 479 U.S. 1068 (1987). "While a petitioner for federal habeas relief may not challenge the application of state evidentiary rules, he is entitled to relief if the evidentiary decision created an absence of fundamental fairness . . . [and h]e bears the burden of overcoming the presumption of correctness due the trial court's finding that the evidence was probative and not unduly prejudicial." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (1996) (citations omitted).

As the court of appeal explains, the testimony of the two experts who explained gang culture in general and specific information about the Deep Valley Bloods–of which both Levao and Potts were members–was necessary background information to show the motive and intent of Levao and Potts and help the jury understand the targeted nature of the crime. The admission of such relevant testimony was, therefore, not so prejudicial that it "'fatally infected the trial.'" *Ortiz-Sandoval*, 81 F.3d at 897. Further, "nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence." *Estelle v. McGuire*, 502 U.S. 62, 70 (1991).

Accordingly, this court recommends that habeas relief not be available to Levao for this claim because the state court's denial was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

**B.     Ground Two: Ineffective Assistance of Counsel.**

Levao argues he received ineffective assistance in violation of the sixth and fourteenth amendments, because trial counsel failed to move to sever his trial from Potts's trial and failed to present the testimony of an eyewitness identification expert. FAP, att. 1 p.1.

A defendant is denied his constitutional right to counsel when a defense attorney's performance falls below an objective standard of reasonableness and consequently prejudices the defense. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's errors must be so serious that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 369-370 (1993). In assessing counsel's performance, the court employs a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690. The court's review of counsel's

performance is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough*, 540 U.S. at 6.

For both claims for ineffective assistance of counsel, the court of appeal assumed arguendo that reasonably competent counsel would have moved to sever the trial from Levao's co-defendant and would have presented an eyewitness identification expert. Lodgment 3 at 13-14. The court focuses its analysis, therefore, on the lack of prejudice to Levao by proceeding with a joint trial and not presenting an eyewitness identification expert.

### 1. Failure to Sever Trial from Co-Defendant.

Levao argues that during trial the prosecution presented extensive and inflammatory evidence concerning conduct and an additional charge that related to only Potts. FAP, att. 1 p.2. The prosecution introduced "consciousness of guilt" evidence that Potts tried to escape from jail. *Id.* It also played redacted recordings of telephone calls that Potts made in which he described the events and circumstances surrounding the crime. *Id.* In these calls Potts used many terms identified as gang terminology and made several admissions of gang affiliation and activities. *Id.* At no time did counsel move to sever Levao's trial from Potts's trial.

The court of appeal assumed, arguendo, that reasonably competent counsel would have moved to sever the trial. It focused its analysis, therefore, on any prejudice to Levao due to proceeding in a joint trial with Potts. It found no prejudice:

> When two or more defendants are jointly charged with a crime, they must be tried jointly unless the trial court orders separate trials. (§ 1098.) Separate trials are the exception. (*People v. Alvarez* (1996) 14 Cal.4th 155, 190.) In essence, Levao claims he was prejudiced by being associated with Potts because Potts attempted to escape, admitted being at the scene, and gang affiliation. As discussed above, the evidence of Potts's escape attempts was not inflammatory (see section II.A., *supra*), it is not likely that evidence suggesting *Potts's* consciousness of guilt impacted the jury's verdict as to Levao.
>
> Additionally, because the prosecution redacted Potts's telephone calls from jail to eliminate any reference to Levao and the trial court instructed the jury that it could not use the statements of one of the defendants against the other, we fail to see how Levao was prejudiced by being associated with a person who belonged to a criminal street gang given the evidence of Levao's own gang involvement. Under these circumstances it is not reasonably likely that the jury based its verdict on Levao's association with Potts, rather than on the evidence presented at trial establishing Levao's guilt.

Lodgment 3 at 13-14 (emphasis in original).

This court does not find that counsel's failure to move to sever the trial from Potts rendered the guilty verdict against Levao fundamentally unfair or unreliable. *See Lockhart*, 506 U.S. at 369-370. As the court of appeal points out, there was no reference to Levao in the recorded phone calls made by Potts. Levao was not at all implicated in the information related to Potts's attempts to escape from jail. Further, there was significant evidence of Levao's own gang involvement, including eyewitness testimony and identification of Levao (Lodgment 9, Vol. 2 at 232-236, 239, 254), DNA evidence tying Levao to the getaway car (Lodgment 9, Vol. 6 at 935) and expert testimony that Levao was a documented gang member at the time of the murder (Lodgment 9, Vol. 5 at 833, 836). This court finds that the court of appeal did not err in finding there was no prejudicial association in trying Levao jointly with Potts, and consequently no meritorious claim for ineffective assistance of counsel. *See Yarborough*, 540 U.S. at 5. Accordingly, the state court's denial was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. This court recommends that the district judge deny this claim.

### 2. Failure to Call an Eyewitness Identification Expert to Testify.

Levao argues that at trial, three witnesses–Kenny Brown, Lisa Watson and Anita Garcia–identified Levao as the shooter with the shotgun but with varying degrees of certainty and many contradictions. FAP, att.1, p.2. Counsel told the court that he intended to present an identification expert to demonstrate the likelihood that Levao was misidentified. The court, however, indicated the prosecution could rebut that evidence with statements that Levao made to his mother or to the police. Counsel then decided to not present the identification expert. But Levao argues that had counsel presented the expert witness and restricted the evidence to questions he noted on the record, the prosecutor would not be able to introduce incriminating statements. Thus, Levao argues he suffered prejudice because he was left without a misidentification defense and could not test the prosecution's case.

Even assuming that counsel erred in failing to call an identification expert, the court of appeal found that Levao suffered no prejudice from counsel's decision to not present such an expert:

///

> Finally, the record does not support Levao's assertion that he was prejudiced by defense counsel's decision to not have an identification expert testify regarding how memory works, attention, coding, storage retrieval, suggestive lineups and the impact of stress on memory recall. Although Brown and Anita identified Levao as the person with the shotgun and Lisa described an individual matching Levao's description as the person carrying the shotgun, this was not the only evidence connecting him to the crime.
>
> Hill heard an individual exclaim that he had been "hit" and gave the license plate number of a suspicious vehicle to the police. Levao suffered a gunshot wound on the night of the murder and police found his blood inside a car with a matching description and license plate number. Police also found Levao's blood on the jacket discarded by Potts after the murder and described by Lisa and three other witnesses. Accordingly, any assumed error by defense counsel in not calling the expert resulted in no prejudice and the lack of prejudice defeats Levao's claim of ineffective assistance of counsel.

Lodgment 3 at 14-15.

Counsel's decision to release the eyewitness identification expert did not render the guilty verdict against Levao fundamentally unfair or unreliable. *See Lockhart*, 506 U.S. at 369-370. Levao suffered no prejudice from the lack of a misidentification defense because the case did not hinge on faulty witness identifications. *See Yarborough*, 540 U.S. at 5. As cited above there was other physical evidence and expert testimony linking Levao to the murder.

To show prejudice, Petitioner would have to show more than just "some conceivable effect on the outcome of the proceeding." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 787 (2011) (citations omitted) (denying ineffective assistance of counsel claim where attorney failed to consult forensic blood experts or introduce expert testimony). He would have to show that counsel's failure to call identification witnesses undermined confidence in the outcome. *Id.* He would also have to show that he had an identification expert witness ready to testify on his behalf. *Dows v. Wood*, 211 F.3d 480, 486-487 (9th Cir. 2000) (petitioner would have to show that an alleged alibi witness existed by providing an affidavit from such a witness); *U.S. v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (petitioner would have to show that the witness would have testified). He did none of these things.

This court recommends that the district judge deny this habeas claim, because the court of appeal decision finding no ineffective assistance of counsel as to this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

### C. Ground Three: Claims Based on Levao's Recorded Conversations with His Mother.

Levao argues that his fourth amendment rights were violated when he was not provided a full and fair hearing on his motion to suppress the incriminating statements he made to his mother at the station house. FAP att. 1 p.3. At the station, police told Levao he would be allowed "private time with his mother." *Id.* Levao brought a Penal Code section 1538.5 motion to suppress the video and audio taped conversation. *Id.*

Respondent does not submit any argument regarding Levao's fourth amendment claim, arguing the recording was not a search or seizure of evidence. Rather, it views the recording as implicating a possible fifth amendment *Miranda* issue. The court will look at the application of both the fourth and fifth amendments with respect to the recorded conversation.

#### 1. Fourth Amendment Claim Regarding Recorded Conversations.

In the petition Levao argues that his fourth amendment rights were violated because "he was not provided a full and fair hearing on the issue in state court . . . [regarding his] motion to suppress the incriminating statements [Levao] made to his mother at the station house." FAP att. 1 p.3. Levao, therefore, is not arguing that the motion was incorrectly decided but rather that he did not have a full and fair opportunity to litigate the motion to suppress.

A petitioner is not entitled to federal habeas relief based on a fourth amendment search and seizure claim unless he was denied the opportunity to fully and fairly litigate the claim in state court. *Stone v. Powell*, 428 U.S. 465, 494-495 (1976); *Woolery v. Arave*, 8 F.3d 1325, 1326 (9th Cir. 1993). The relevant inquiry is "whether petitioner had the opportunity to litigate the claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citing *Gordon v. Duran*, 895 F.2d 610, 613-614 (9th Cir. 1990) and *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983)). In California, a petitioner has the opportunity to a full and fair litigation of fourth amendment search and seizure claims under California Penal Code section 1538.5. *Gordon*, 895 F.2d at 613. An examination of the state-court records such as the transcript of the suppression hearing, appellate brief, and appellate opinion shows whether a petitioner received a full and fair opportunity to litigate fourth amendment claims. *See Terranova v. Kinchceloe*, 912 F.2d 1176,

1178-79 (9th Cir. 1990).[6]

Regarding the motion to suppress, defense counsel submitted a written brief. Lodgment 8 at 125-135. The court held a full hearing on the issue. Lodgment 9 at 62. The prosecution called Kelly Deveney, the lead detective on the case, to testify. *Id.* She testified that she read Levao his *Miranda* rights and he waived them. Lodgment 9 at 64. Detective Deveney then questioned Levao about the murder. Lodgment 9 at 64-74. She is the one who put him in the interview room with his mother and told him he had private time with her. Lodgment 9 at 74-75. Defense counsel cross-examined her on this subject. *Id.* On appeal, Levao argued that the ruling on the motion to suppress should be reversed because the officers created an expectation of privacy when they let him speak to his mother. Lodgment 6 at 23-27. The court of appeal rejected Levao's argument, finding Levao's claims of prejudice speculative, especially in light of the fact that the recorded conversation was never introduced at trial. Lodgment 3 at 16.

Levao does not provide any arguments (even in his appellate brief) to support his claim that he did not receive a full and fair hearing on his motion to suppress. Based on the facts that he had a full hearing with oral argument, cross-examined the witnesses and argued the issue on appeal, the court finds that he had a full and fair opportunity to litigate the motion to suppress the statements he made to his mother. Thus the state court's decision is not contrary to or an unreasonable application of clearly established Supreme Court law, and the court recommends that this claim be denied.

### 2. Fifth Amendment Claim Regarding Recorded Conversations.

*Miranda* bars the prosecution from using statements stemming from custodial interrogation unless the defendant was first warned of his constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). The *Miranda* safeguards apply when law enforcement officials initiate questioning after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. *Miranda*, 384 U.S. at 444;

---

[6]The court is aware of only one applicable case where a fourth amendment claim was not barred by *Stone*. *See Anderson v. Calderon*, 232 F.3d 1053 (9th Cir. 2000), *overruled on other grounds, Bittaker v. Woodford,* 331 F.3d 715 (9th Cir. 2003). In *Anderson*–a death penalty case with two penalty-phase trials and a lengthy appeal process–the court found that the petitioner did not have an opportunity to fully and fairly litigate his fourth amendment claim because the claim did not exist until eleven years after his arrest, and the California Supreme Court denied the claim on procedural grounds as it was not raised on appeal. *Id.* at 1068.

*Stansbury*, 511 U.S. at 322. A court need not bar use of "un-*Mirandized*" statements if they constitute harmless errror. *U.S. v. Henley*, 984 F.2d 1040, 1044 (9th Cir. 1993). To be considered harmless, the court must determine whether the "un-*Mirandized*" statements contributed to the conviction, and be able to declare that the error was harmless beyond a reasonable doubt. *Arizona v. Fulminante*, 499 U.S. 279, 295-296 (1991).

Here, the statements made were not in response to a custodial interrogation. The statements were made by Levao to his mother at the police station. The issue argued at the motion to suppress and on appeal is whether Levao had a reasonable expectation of privacy in his conversation at the police station, not whether the statements came from a custodial interrogation. In any event, even if these are considered "un-*Mirandized*" statements obtained as a result of a custodial interrogation, they are harmless, because the statements did not contribute to the conviction as they were never used at trial.

Levao does not expressly claim a fifth amendment violation regarding the recorded conversation with his mother. Respondent, though, raises the fifth amendment claim and analyzes it in a way similar to the ineffective assistance of counsel claim based on the failure to present a defense identification expert. The court does not see a fifth amendment claim here, because there is no record or argument that Levao's recorded conversation with his mother was a custodial interrogation, and the recorded statements did not at all contribute to his conviction because they were never introduced. Rather, the issue was whether Levao had an expectation of privacy in his conversation. Lodgment 9 at 113. In sum, nothing in the state court decision regarding the denial of Levao's motion to suppress appears contrary to or an unreasonable application of clearly established Supreme Court law regarding the fifth amendment. Accordingly, the court recommends that this claim be denied.

**D. <u>Ground Four: Claims Related to Involuntary Statements Made to Investigators.</u>**

**1. Fifth Amendment Claim Regarding Statements to Investigators.**

The prosecution cannot use statements obtained as a result of a custodial interrogation unless the defendant was first informed of his constitutional rights. *Miranda*, 384 U.S. at 444; *Stansbury*, 511 U.S. at 322. Here, after being discharged from the hospital, Detective Deveney and her partner, Aaron Doyle, picked up Levao and drove him to the Oceanside Police Department. Lodgment 9 at 62-63. They took him to an interview room and read him his *Miranda* rights. Lodgment 9 at 64. Levao said he

understood his rights and that he wanted to talk to the officers. *Id.* He appeared to understand the questions and answered them voluntarily. Lodgment 9 at 64-65. Levao ultimately admitted to shooting Jesse Watson. Lodgment 9 at 67.

Defense counsel filed a motion to suppress Levao's statements arguing that the confession was involuntary, even though he had been told by the prosecution that it had no intent to introduce the confession at trial. Lodgment 8 at 125-135; Lodgment 9 at 115-118. On the record, the trial court evaluated the motion, compared Levao's circumstances to relevant case law and denied the motion. Lodgment 9 at 112-118. The prosecution never sought to introduce the confession at trial. Levao complains–in his appellate brief–that even though the statements were never introduced at trial, the recorded "confession" impacted his counsel's decision to not call an eyewitness identification expert, and to not call Levao to testify in his own defense, which was his only hope to obtain an manslaughter conviction. Lodgment 6 at 27. The court of appeal found such claims to be speculative:

> As a threshold matter, we agree with the Attorney General's argument that Levao's claims of prejudice are speculative. Additionally, we fail to see how general expert testimony regarding possible weakness in eyewitness identification testimony would have opened the door to the introduction of Levao's incriminating statements. In any event, even assuming the denial of the suppression motion caused his counsel to not call an identification expert, Brown and Anita's eyewitness testimony was only part of the evidence connecting Levao to the crime. [Citation omitted.] On this record, there is no merit to Levao's speculative prejudice contentions.

Lodgment 6 at 16-17.

The court finds no fifth amendment violation here as the prosecution never sought to introduce the confession at trial. *See Miranda*, 384 U.S. at 444; *Stansbury*, 511 U.S. at 322. Because the statements could not at all have contributed to the conviction, this court finds that the court of appeal's denial of the motion to suppress was not contrary to, nor an unreasonable application of, clearly established Supreme Court law regarding the fifth amendment. Accordingly, the court recommends that the district judge deny this claim.

**2.     Fourteenth Amendment Claim Regarding Statements to Investigators.**

Levao argues that the improper denial of the motion to suppress his involuntary confession deprived him of a fair trial because it impacted his attorney's strategic trial decisions. Respondent argues that the statements were never introduced at trial, and that even if the trial court suppressed the

evidence, those statements could have been used for impeachment.

The Constitution guarantees that all defendants have "a fundamental, absolute right to a fair trial in a fair tribunal." *Spencer v. Texas*, 385 U.S. 554, 562 (1967). Such a guarantee "lies at the base of all our civil and political institutions." *U.S. v. Farhad*, 190 F.3d 1097, 1105 (9th Cir. 1999) (citations omitted). The right to a fair trial "is designed to maximize the likelihood of a fair and reliable determination of guilt or innocence." *Id.* Where the proceedings fall short of being fair, a defendant is deprived due process of law. *Id.*

As already explained, the court of appeal denied the motion to suppress because it found Levao's claims that it affected the defense strategy to be speculative. Lodgment 6 at 16-17. The court of appeal referred to significant evidence other than eyewitness testimony, implying that it did not matter that there was no defense eyewitness identification expert. *Id.* Further, if Levao testified on his own behalf, granting the motion to suppress would have not prevented his incriminating statements from being introduced as impeachment evidence. *See Harris v. New York*, 401 U.S. 222, 225 (1971) (prosecutors may impeach defendants with incriminating and voluntary statements even if obtained in violation of *Miranda*).

Based on Levao's speculative claims that he would have altered his defense strategy had the motion to suppress been granted, and the fact that the statements were never introduced at trial, this court finds that the court of appeal's denial of the motion to suppress was not contrary to, nor an unreasonable application of, clearly established Supreme Court law regarding the fourteenth amendment and right to a fair trial. The court recommends that the district judge deny this claim.

### E. Counsel's Preparation for the Motion to Suppress Hearing.

Levao claims that his trial counsel provided ineffective assistance by failing to properly prepare for the motion to suppress the statements he made to his mother. [Dkt. No. 33 at 2.] As discussed, to show counsel was ineffective, a petitioner must show both that the defense attorney's performance fell below an objective standard of reasonableness (deficient performance) and consequently prejudiced the defense (prejudice). *Yarborough*, 540 U.S. at 5; *Strickland*, 466 U.S. at 687. Counsel's errors must have been so serious as to render the result of the proceeding fundamentally unfair or unreliable. *Lockhart*, 506 U.S. at 369-370.

Because there is no reasoned state court decision on this issue, the court has conducted an independent review of the record. *Himes*, 336 F.3d at 853. First, defense counsel prepared a thorough brief for the motion to suppress. Lodgment 8 at 125-135. He expressly addressed why the statements made to his mother should not be admitted and supported his argument with several cases. Lodgment 8 at 124-125. The court issued a tentative ruling to deny the motion to suppress. Lodgment 9 at 61. Even though the trial judge felt confident in the ruling, after hearing defense counsel's further argument, the court decided to schedule a special hearing on the motion. Lodgment 9 at 61-62. At the start of the hearing the court said that it reviewed the video recording of Levao's statements to his mother. Lodgment 9 at 113. The court then listed out the cases defense counsel cited in the motion to suppress and distinguished them from the facts and circumstances surrounding Levao's statements. Lodgment 9 at 112-113. The court then specifically denied the motion to suppress the statements made to Levao's mother because there was no expectation of privacy for that conversation, and did not take further argument on the issue. Lodgment 9 at 114. Levao's counsel engaged in a lengthy dialogue with the court and the prosecution regarding whether the prosecution might actually try to introduce the statements made to his mother and the effect that had on the status of the case. Lodgment 9 at 114-118.

Based on the facts that defense counsel provided a thoughtful brief that the judge fully considered, engaged in significant dialogue regarding the impact of the judge's ruling on the motion to suppress, there is no indication that counsel's performance was deficient. Further, Levao cannot show any prejudice from the denial of the motion to suppress the statements he made to his mother. The recording did not at all contribute to his conviction because it was never introduced. As already explained, the court of appeal denied the motion to suppress because it found Levao's claims that it affected the defense strategy to be speculative. Lodgment 6 at 16-17; *see* § D.2., *supra*. In assessing counsel's performance, it appears that counsel rendered adequate assistance and exercised reasonable professional judgment, and there was no prejudice to Levao. *See Strickland*, 466 U.S. at 690. Accordingly, this court recommends that this claim for habeas relief be denied.

**F.     Counsel's Failure to Object to Photo Identification.**

Levao raises his final ineffective assistance of counsel claim with regarding to his trial counsel's failure to "object to the prejudicial nature of the photo identification or failing to point out the

suggestive factors to the jury." [Dkt. No. 33 at 2.] The court conducts an independent review of this claim because there is no reasoned state court decision on the issue. *Himes*, 336 F.3d at 853. As previously explained, a reviewing court need only address either deficient performance or prejudice for an ineffective assistance of counsel claim, if a petitioner makes an insufficient showing on either one of the components. *Strickland*, 466 U.S. at 697.

Assuming, arguendo, that defense counsel had a deficient performance by failing to object to the prejudicial nature of the photo identification or failure to point out suggestive factors to the jury, no prejudice resulted from this inaction. First, Levao's guilt was only partially established by eyewitness identifications by Kenneth Brown and Anita Garcia in the courtroom. Lodgment 3 at 16-17; Lodgment 9 Vol. 2 at 238-239; Vol. 3 at 352-353. Other evidence included a witness who recorded the license plate number of a red Nissan Sentra that left the crime scene, in which police later recovered blood matching Levao's DNA profile. Lodgment 9, Vol. 6 at 935, Lodgment 3 at 3, 14-15. Police also found his DNA on a jacket that had been dumped on the grounds of an elementary school, and nearby that jacket was found the shotgun used to kill Jesse Watson. Lodgment 3 at 3, 14-15.

Further, there were already factors in place to address the reliability of the witness identifications. For example, before Ms. Garcia identified Levao in a photo lineup at the police station, she was read an admonition saying that the suspect may or may not be in the photograph and that it was important to identify or say that the person was not in the lineup. Lodgment 9, Vol. 3 at 352. She identified Levao in the lineup, and also at trial. Lodgment 9, Vol. 3 at 353. Also, in the jury instructions, the court instructed the jury with factors to consider on the reliability of eyewitness identifications. Those instructions stated:

> You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. In evaluating identification testimony, consider the following questions:
>
> • Did the witness know or have contact with the defendant before the event?
> • How well could the witness see the perpetrator?
> • What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, and duration of observation?

- How closely was the witness paying attention?
- Was the witness under stress when he or she made the observation?
- Did the witness give a description and how does that description compare to the defendant?
- How much time passed between the event and the time when the witness identified the defendant?
- Was the witness asked to pick the perpetrator out of a group?
- Did the witness ever fail to identify the defendant?
- Did the witness ever change his or her mind about the identification?
- How certain was the witness when he or she made an identification?
- Are the witness and the defendant of different races?
- Were there any other circumstances affecting the witness's ability to make an accurate identification?
- Was the witness able to identify other participants in the crime?
- Was the witness able to identify the defendant in a photographic or physical lineup?

The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find that the defendant not guilty.

Lodgment 7, Vol. 2 at 292-293.

Considering the non-eyewitness evidence supporting the conviction, the admonition given to at least one of the eyewitnesses, and the reliability factors read to the jury in the instructions, this court finds that counsel's failure to object to the photo identifications did not prejudice Levao in his trial. Accordingly, the court recommends that the district judge deny this claim.

### IV. CONCLUSION

Petitioner has failed to show the state court determinations were contrary to or an unreasonable application of clearly established federal law, or that they were based on an unreasonable determination of facts. Further, the record does not support last two claims for ineffective assistance of counsel. Therefore the Court **RECOMMENDS** the Petition be **DENIED** in its entirety. The court submits this

1  report and recommendation to the United States District Judge assigned to this case pursuant to 28
2  U.S.C. § 636(b)(1).

3  **IT IS ORDERED** that no later than **February 22, 2013**, any party to this action may file written
4  objections with the Court and serve a copy on all parties.  The document should be captioned
5  "Objections to Report and Recommendation."

6  **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and
7  served on all parties no later than **March 4, 2013**.  The parties are advised that failure to file objections
8  within the specified time may waive the right to raise those objections on appeal of the Court's order.
9  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

10  DATED:  January 31, 2013

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court